UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 12 2016
```

Lesby Banegas

    Plaintiff,

–v–

The Mirador Corp., et al.,

    Defendants.

14-cv-8491 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

  On October 23, 2014, Plaintiff Lesby Banegas filed a complaint in the Southern District of New York alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the New York Labor Law ("NYLL"), Art. 19 § 650 *et seq.*, and state and local antidiscrimination laws. Dkt. No. 1 ("Compl."). Banegas claims that Defendants—a group of corporate entities and individuals associated with the Rey de Copas Restaurants—failed to pay the legally required minimum wage and overtime compensation to Banegas; failed to provide Banegas with proper wage notices and statements; made improper deductions from Banegas's tips; and terminated Banegas because she was pregnant. *Id.* ¶¶ 26-31.

  In August 2015, the parties reported that they had reached a settlement. Dkt. No. 23. The Court thereafter instructed the parties to submit their settlement, along with a joint letter explaining why the settlement should be approved, so that the Court could review the settlement to ensure that it is fair and reasonable, in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). Dkt. No. 24. The Court advised the parties that it would not approve a settlement containing a confidentiality provision. *Id.* The parties have submitted their settlement, *see* Dkt. No. 26, Ex. A ("Settlement Agreement"), along with a damages calculation, *see id.*, Ex. B, and the Court has reviewed those materials. The Court concludes, however, that

1

the parties have failed to submit sufficient information for the Court to properly assess the fairness and reasonableness of the settlement. Approval of the settlement is therefore denied, with the understanding that if the parties address the Court's concerns and resubmit, the settlement will be approved.

## I.     LEGAL STANDARD

FLSA suits cannot be privately settled. *Cheeks*, 796 F.3d at 206. In keeping with FLSA's purpose of ensuring workers "a fair day's pay for a fair day's work," a settlement in a FLSA case must be approved either by a court or by the Department of Labor. *Id.* (quoting *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493 (1945)). This action therefore cannot be dismissed with prejudice until the Court has satisfied itself that the resolution proposed by the parties is "fair and reasonable." *See, e.g., Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). A reasonable agreement must "reflect[] a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Mamani v. Licetti*, No. 13-CV-7002, 2014 WL 2971050, at *1 (S.D.N.Y. July 2, 2014).

In order to evaluate the fairness of a proposed settlement, the parties must provide the court with enough information to evaluate "the bona fides of the dispute." *Id.* (quoting *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)). At minimum, this includes information on "the nature of plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure both to plaintiffs and to any putative class, the bases of estimates of plaintiffs' maximum possible recovery, the probability of plaintiffs' success on the merits, and evidence supporting any requested fee award." *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015). The parties must articulate their remaining points of disagreement to the Court. *Mamani*, 2014 WL 2971050, at *1. If they disagree over the calculation of wages owed, they "must provide each party's estimate of the number of hours worked and the applicable wage." *Id.* (internal quotation mark omitted). In reviewing the reasonableness of attorneys' fees requested, the Court looks to "the lodestar—the product of a reasonable hourly

rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee." *Zhang v. Lin Kumo Japanese Rest., Inc.*, No. 13-CV-6667 (PAE), 2015 WL 5122530, at *2 (S.D.N.Y. Aug. 31, 2015) (quoting *Stanczyk v. City of N.Y.*, 752 F.3d 273, 284 (2d Cir. 2014)).

## II.   DISCUSSION

The proposed settlement submitted by the parties indicates that Defendants will pay a total of $9,000 to settle Banegas's claims—$5,400 of which will be payable to Banegas, and $3,600 of which will be payable to her attorneys. Settlement Agreement at 1-2. That total may well be a fair and reasonable amount, and it appears to be the product of an arms-length negotiation, but there are several lingering issues that the parties must address before the Court can approve the settlement.

First, the parties have failed to provide "each party's estimate of the number of hours worked and the applicable wage." *Mamani*, 2014 WL 2971050, at *1 (internal quotation mark omitted). Instead, they have sent conflicting signals about whether they actually disagree on the amount of back wages Banegas is owed. In the joint submission they submitted to the Court, the parties indicate that Banegas "claims that she worked for Defendants from in or about 2010 until May 15, 2014," but that "Defendants maintain that she worked for them for only a couple months." Dkt. No. 26 ("Joint Submission") at 1. Such a significant difference in the parties' assessments of the duration of Banegas's employment should, in theory, result in different estimates of the damages Banegas can recover. But the parties have submitted only one damages estimate, and they have not made clear to what extent they agree on the information that forms the basis of the calculations used to arrive at that estimate. *See* Joint Submission, Ex. B.[1] On

---

[1] The parties have redacted the publicly-filed version of their damages calculation. *See* Dkt. No. 26, Ex. B. But pursuant to the Rule 4.A. of this Court's Individual Practices in Civil Cases, the parties were required to request permission to file a redacted document and to justify the request in light of the Second Circuit's decision in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 113 (2d Cir. 2006). The parties are hereby instructed to comply with the Court's rules when they resubmit their settlement and supporting documents.

the one hand, the parties represent that the damages exhibit represents "*Plaintiff's* damage calculation," but on the other hand, the parties claim that the exhibit uses "the time in which *Defendants* claim Plaintiff was employed" as the starting point for calculating Banegas's back wages.  Joint Submission at 2 (emphasis added).

Specifically, the calculations in the parties' exhibit reflect the assumptions that Banegas worked from November 1, 2013, through April 26, 2014, that she worked nine hours a day for three days a week, and that she was paid $45 a day.  Dkt. No. 26, Ex. B.  But Banegas's complaint alleges that she was hired "[i]n or around 2010," that she worked ten hours a day, six days a week (i.e., 60 hours per week) from her hiring until April 14, 2014, and that she worked 30 hours per week from April 14, 2014, through May 15, 2014.  Compl. ¶¶ 20, 21, 23.  Moreover, Banegas alleges that she was paid $25 per day from her hiring until May 1, 2013; $40 per day from May 1, 2013, until January 1, 2014; and $45 a day for the remainder of her tenure with Defendants.  *Id.* ¶ 20.  Even on the assumption that Banegas did not begin working until the last day of 2010, the Court calculates that she would be owed $65,172 in back wages alone if the allegations in her complaint are true.[2]  That would represent more than twelve times the value of the proposed settlement for Banegas.  Of course, Banegas's assessment of her claims may have changed since filing her complaint, and there may be good reasons why she has not proffered a maximum possible recovery greater than the amount listed in the exhibit attached to the parties' joint submission.  But those reasons have not been presented to the Court, and the Court cannot ensure that the settlement is fair and reasonable until they are.

The second reason the Court cannot approve the settlement in its current form is that the parties have not indicated how much of the settlement is actually compensation for Banegas's *FLSA* claims, as distinct from her discrimination claims.  Banegas avers that "$5,400 is an

---

[2] That number could more than double because of liquidated damages and other statutory penalties. With respect to liquidated damages, however, the Court notes that there is persuasive authority in this circuit holding that FLSA plaintiffs cannot "double recover" liquidated damages under both FLSA and the NYLL. *See, e.g., Inclan v. N.Y. Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 560 (S.D.N.Y. 2015) (declining "to rule that plaintiffs are entitled to cumulative liquidated damages under the FLSA and NYLL" because there is not a meaningful distinction between the purpose of the liquidated damages provision in each statute).

4

excellent result which compensates for *both* the total backwages [sic] owed and for Plaintiff's discrimination claims." Joint Submission at 2 (emphasis added). But the Court is not in a position to judge whether that result is in fact "excellent" if the parties do make clear what percentage of that $5,400 is going to Banegas's FLSA claims. When this Court approved a FLSA settlement that also resolved a non-FLSA claim, the payment for the plaintiff's non-FLSA claim was "separate from the payment he . . . receive[d] for his FLSA claim." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13-CV-8187 (AJN), 2015 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015). Such separation allows the Court to ensure that a plaintiff is settling her FLSA claims for a "fair and reasonable" amount. *Wolinsky*, 900 F. Supp. 2d at 335. Here, for instance, the parties assert that the $5,400 Banegas would receive "provide[s] full 100% recovery of back wages." Joint Submission at 2. But that is only true if Banegas's discrimination claims are worth less than the difference between the settlement amount ($5,400) and her back wages ($2,422.50, according to the joint submission). Without additional information, the Court cannot make such a determination. To be clear, the Court need not and will not separately approve the fairness of the settlement of Banegas's discrimination claims. Rather, the Court must assure itself that Banegas is settling her FLSA claims in a manner that comports with the requirements of *Cheeks*. 796 F.3d at 206.

Relatedly, the Court must also assure itself that the cost to Banegas of settling her FLSA claims is not a sweeping liability release for Defendants. Generally, a FLSA settlement cannot offer the defendant a release from liability that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues." *Cheeks*, 796 F.3d at 206 (quoting *Lopez*, 96 F. Supp. 3d at 181); *see also Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014). Here, the settlement agreement states that Banegas:

> irrevocably and unconditionally releases and forever discharges [Defendants] . . . from any and all charges, complaints, and liabilities of any kind whatsoever, known or unknown, suspected or unsuspected . . . which [Banegbas] at any time has, had or

5

      claimed to have against [Defendants] regarding events that have occurred as of the Effective Date of this Agreement.

Settlement Agreement at 2. If this broad release of liability "stems from a non-FLSA claim that happens to be settled in the same agreement," i.e., Banegas's discrimination claims, then the Court need not scrutinize the liability release for fairness. *Gaspar*, 2015 WL 7871036, at *2. But again, the Court does not presently have enough information to determine why the settlement includes such a broad liability release.

      The Court's third area of concern with the settlement is that, despite the Court's indication that it would not approve a settlement with a confidentiality provision, *see* Dkt. No. 24, the settlement provides that neither party "shall publicize or disclose to any person or entity . . . any of the terms of this Settlement Agreement." Settlement Agreement at 3. To be sure, the fact that the parties have filed the Settlement Agreement publicly on the docket has already ensured that the settlement is not truly "confidential." But as another court in this district has explained, "practically speaking the public filing of the settlement in this case, standing alone, is unlikely to benefit the low-wage workers that the FLSA was intended to protect, as the best way for a worker to learn about his or her employment rights is directly or indirectly from a coworker or an outside organization." *Sanz v. Johny Utah 51 LLC*, No. 14-CV-4380 (JMF), 2015 WL 1808935, at *2 (S.D.N.Y. Apr. 20, 2015) (internal quotation marks, citation, and alterations omitted). Accordingly, any re-submitted settlement should not include a confidentiality provision.

      Finally, Banegas's request for attorneys' fees is not adequately supported. Courts evaluating the fairness of FLSA settlements must consider whether a proposed award of attorneys' fees is reasonable. *Wolinsky*, 900 F. Supp. 2d at 336. A proper fee request "entails submitting contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Id.* (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)). Although the parties' joint submission mentions the hourly rates charged by Banegas's counsel, and the total number of hours each

attorney and paralegal worked, no billing records documenting the expenditure of time on this case are included. Proper documentation is particularly important here, given that counsel's $3,600-share of the $9,000 award, i.e., 40% of the total, is a larger percentage than courts in this circuit typically approve in FLSA cases. *See, e.g., Thornhill v. CVS Pharmacy, Inc.*, No. 13-CV-5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) ("In this Circuit, courts typically approve attorney's fees that range between 30 and 33⅓ [percent]."); *Lopez v. Poko-St. Ann L.P.*, No. 15-CV-4980 (BCM), 2016 WL 1319088, at *1-2 (S.D.N.Y. Apr. 4, 2016) (declining to approve attorneys' fees that constituted 40.08% of the total settlement). The Court also notes that, even when "counsel's lodestar . . . is higher than the fee requested," as is purportedly the case here, courts have found that fact "insufficient to justify either the application of the lodestar method or the award of a higher fee." *Thornhill*, 2014 WL 1100135, at *3 (internal quotation marks, citation, and alterations omitted). Accordingly, Banegas's counsel must submit proper documentation of the billing records from this case in order for the Court to determine what constitutes a reasonable attorneys' fee.

## III. CONCLUSION

For the reasons explained above, the Court cannot approve the settlement as currently proposed. The parties are hereby ORDERED to meet and confer about the settlement, and to file a revised settlement proposal, along with the documents necessary for the Court to assess the settlement's reasonableness and fairness, no later than April 29, 2016. The Court will act on any revised settlement in short order.[3]

SO ORDERED.

---

[3] The Court notes that this action appears to have been inadvertently terminated on August 26, 2015. The Clerk of Court is therefore directed to re-open this action.

7

Dated: April 12, 2016
      New York, New York

_____
ALISON J. NATHAN
United States District Judge